Filed 3/8/13  P. v. Cruz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JIMMY LEE CRUZ,<br><br>  Defendant and Appellant. | F063811<br><br>(Kern Super. Ct. No. BF135848B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon, Harry Joseph Colombo, and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant/defendant Jimmy Lee Cruz (defendant) was charged with several drug-related offenses:  count I – possession of methamphetamine for sale (Health & Saf. Code, § 11378); count II – possession of hydrocodone for sale (Health & Saf. Code, §11351); count III – unlawful possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); count IV – unlawful possession of hydrocodone (Health & Saf. Code, § 11350, subd. (a)); and count V unlawful possession of drug paraphernalia (Health & Saf. Code, § 11364).[1]

Defendant changed his plea to no contest in exchange for a court-indicated sentence of three years in jail.  Subsequently, he was sentenced to four concurrent three-year jail terms on counts I through IV.

Defendant raises a number of issues on appeal.  First, he claims the superior court erred in denying his motion to suppress evidence found in an apartment under color of a search warrant. Second, he asserts that his sentences on counts III and IV must be stayed pursuant to Penal Code[2] section 654.  Finally, he argues that equal protection considerations require that section 4019 be applied retroactively.

We will stay the execution of the sentences on counts III and IV and otherwise affirm.

---

[1] Defendant was also charged with one count of destruction of evidence in connection with the drug charges (Pen. Code, § 135), which was eventually reduced to an attempt charge (Pen. Code, §§ 135 & 664).

[2] All further statutory references are to the Penal Code unless otherwise stated.

## STATEMENT OF FACTS

*The Search Warrant*[3]

Kern County Deputy Sheriff Juan Bravo believed defendant was using an apartment unit in Bakersfield, California, to sell drugs. Deputy Bravo sought a warrant to search the apartment unit.

In his affidavit supporting the warrant request, Deputy Bravo attested that, "[w]ithin the past thirty (30) days," he had met with a confidential informant. The informant told Deputy Bravo that he had seen an individual identified as "Jamaica" possess and sell methamphetamine from the apartment unit. Deputy Bravo performed a records check of the apartment, which yielded the defendant's name: Jimmy Lee Cruz. A records check of defendant's name revealed that he had prior narcotics-related violations and two outstanding misdemeanor warrants. One of the outstanding warrants was for possession of a hypodermic syringe. Deputy Bravo obtained a booking photograph of defendant and showed it to the informant. The informant immediately identified the defendant as "Jamaica."

The affidavit further stated that "[w]ithin the last ten days," Deputy Bravo conducted surveillance of the apartment. During the surveillance, Deputy Bravo observed a vehicle arrive at the apartment parking lot. Its female occupant exited the vehicle and entered the subject apartment unit. After less than three minutes, the female exited the apartment unit and left in her vehicle. Law enforcement stopped the vehicle and found the female to be in possession of a bindle of suspected methamphetamine. Two other occupants of the vehicle were later found to show signs of central nervous system stimulant use and admitted to being methamphetamine users.

---

[3] The facts regarding the search warrant are taken from the affidavit in support of the warrant, which was attached to defendant's motion to suppress evidence. (See *People v. Rios* (1988) 205 Cal.App.3d 833, 836, fn. 2.)

During approximately 20 minutes of surveillance, Deputy Bravo observed a total of three subjects entering the apartment unit and remaining there for less than three minutes. Based on his training and experience, Deputy Bravo concluded that the foot and vehicular traffic was indicative of narcotics trafficking.

The warrant was issued on February 27, 2011.

*Execution of the Search Warrant*[4]

Deputy Sheriff Bravo responded to the apartment unit on March 2, 2011. His colleague, Deputy Sheriff Michael Dorkin, contacted defendant at the door of the apartment. Defendant retreated into the residence and was eventually located in a bathroom along with codefendant, Vaughn Smith. In the bathroom, Deputy Bravo observed a manual scale in the toilet. He also observed a substance he suspected to be methamphetamine on the bathroom floor and in a glass smoking pipe.

Other law enforcement personnel searched the apartment's only bedroom. Multiple items were seized from the bedroom, including: digital scales, suspected methamphetamine, bindles, plastic commonly used to package methamphetamine, more than 20 suspected Vicodin or hydrocodone pills, and more than $2,000.

Two cell phones were also found in the apartment. Deputy Bravo found text messages on the cell phones with language indicative of narcotics transactions.

*Preliminary Hearing*

Deputy Bravo testified at the preliminary hearing that, in his opinion, the hydrocodone and methamphetamine located at the apartment were possessed for the purpose of sale. Deputy Bravo did not distinguish between the methamphetamine found in the bathroom and the methamphetamine found in the bedroom.

---

[4] With the exception of facts regarding the search warrant, these background facts that follow are taken from the preliminary hearing, as this appeal arises from a no contest plea. (See, e.g., *People v. Le* (2006) 136 Cal.App.4th 925, 928.)

A criminalist from the district attorney's crime lab testified at the preliminary hearing regarding the substances found in the apartment. Color and crystal tests showed that the substances found on the floor of the bathroom, inside the smoking pipe, and in the bedroom were methamphetamine. The criminalist further testified that, based on their markings, the pills found in the bedroom were Vicodin.

## Motion to Suppress

Defendant moved to quash the search warrant and suppress the evidence seized thereunder. Defendant argued that: (1) the search warrant was not supported by probable cause; and (2) that the warrant was not executed with a good faith belief in its validity. Defendant posited that the search warrant lacked probable cause because (1) the supporting affidavit failed to show that the confidential informant was reliable and truthful; and (2) the information contained in the supporting affidavit was stale.

The superior court denied the motion.

## No Contest Plea

At a subsequent pretrial proceeding on September 29, 2011, defendant changed his plea to no contest in exchange for a court-indicated sentence of concurrent three-year terms.[5] At this change of plea hearing, the superior court discussed what it referred to as defendant Cruz's "Waiver of Constitutional Rights Form." Presumably, the court was referring to the Felony Advisement of Rights, Waiver and Plea Form (plea form) which was signed, but not dated, by defendant. This form contained the following typed text:

> "2. I have not been induced to enter this plea by any promise or representation of any kind, except for the following terms and conditions (state any agreement with the District Attorney or the Court, including any indicated sentence)."

---

[5] Codefendant Vaughn Smith also changed his plea to no contest at the same hearing.

5.

Immediately below this typed text, the following was handwritten:

> "Ct.-indicated 3 years jail under PC 1170(h). U/T on Ct. 1; M/T on Ct. 2; U/T on Ct. 3; U/T on Ct. 4. all to run concurrent."

The court recited the terms of the court-indicated sentence, and defense counsel raised a section 654 claim as follows:

> "**THE COURT**: … Upper term on Count One, mid term on Count Two, upper term on Count Three, upper term on Count Four all to run concurrent. [¶] Mr. Moran [defense counsel], is that your understanding?
>
> "**MR. MORAN** [defense counsel]: Yes, your Honor. [¶] And I failed to put on there, two of those counts will have to be stayed under Section 654, but that can be taken up at the time of sentencing.
>
> "**THE COURT**: All right. Mr. Cruz, is that your understanding?
>
> "**DEFENDANT CRUZ**: Yes, sir."

The prosecution and defense stipulated that the preliminary hearing transcript would provide the factual basis for the plea. Defendant then entered his no contest pleas.

*Sentencing*

On November 3, 2011, the court held a sentencing hearing. Before the hearing, defendant filed a "Statement in Mitigation." In the statement, defendant reasserted his section 654 claim. At the sentencing hearing, defense counsel argued that counts III and IV were "lesser includeds" of counts I and II and, therefore, section 654 applied.

The record indicates that there was confusion as to what was discussed at the September 29, 2011, change of plea hearing. Apparently, codefendant Vaughn Smith's plea form contained language explicitly staying his sentences on counts III and IV. But, defendant Cruz's form did not contain such language. This was apparently an oversight, as defendant Cruz's counsel indicated that he "didn't make [it] clear" on the plea form that the sentences on counts III and IV would be stayed under section 654. The superior court reviewed defendant Cruz's plea form and observed that it stated the sentences were

6.

to run concurrently.  The court then asked whether defendant Cruz wished to withdraw his plea, to which defense counsel responded, "No, your Honor."

The superior court sentenced defendant to concurrent three-year sentences as to each of counts I through IV.[6]

## ANALYSIS

### I.
### THE TRIAL COURT DID NOT ERR IN DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant argues the judgment must be reversed because (1) the search warrant used to search the apartment was not supported by probable cause and (2) that law enforcement's reliance on the warrant was not objectively reasonable.  We find that defendant's first contention lacks merit and therefore do not reach the second.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.  [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  Our review "is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling. [Citations.]" (*People v. Dimitrov* (1995) 33 Cal.App.4th 18, 27.)

Defendant raises three bases for its lack of probable cause contention:  (1) the confidential informant cited in the supporting affidavit was not shown to be reliable; (2) the information supplied by the confidential informant was not sufficiently corroborated; and (3) the supporting affidavit is stale because it lacks information as to when the confidential informant observed defendant selling drugs in the apartment.

---

[6] Defendant was also sentenced to concurrent 90-day sentences on counts V and VI.

*A.* *Reliability and Corroboration*

As defendant's brief correctly notes, the affidavit supporting the warrant does not contain facts directly establishing the reliability of the informant (e.g., that the informant was a disinterested citizen or had a track record for accuracy). However, as we will explain, the supporting affidavit is nonetheless sufficient.

1. Informant Reliability Jurisprudence Before *Illinois v. Gates*

Prior to the Supreme Court's clarification in 1983, some courts applied a rigid two-prong test for determining whether an informant's tip establishes the requisite probable cause to support a search warrant. (*Illinois v. Gates* (1983) 462 U.S. 213, 230 & fn. 5 (*Gates*) citing *Stanley v. State* (Md.Ct.App. 1974) 313 A.2d 847, 861 and *People v. Gates* (Ill. 1981) 423 N.E.2d 887 revd. 462 U.S. 213.) The "original phrasing" of the two-pronged test is set forth in an earlier Supreme Court case, *Aguilar v. State of Texas* (1964) 378 U.S. 108 (*Aguilar*), abrogated by *Gates*, *supra*, 462, U.S. 213. (*Gates*, *supra*, at p. 230, fn. 6.) The two *Aguilar* prongs, as applied by some courts, required that a warrant's supporting affidavit set forth both: (1) the basis for the informant's knowledge; and (2) facts establishing the informant's veracity or the reliability of the informant's report. (*Gates*, *supra*, 462 U.S. at pp. 228-229.) Some courts were treating the two prongs as entirely separate requirements which must be independently satisfied in every case to sustain a determination of probable cause. (*Id*. at p. 229, fn. 4.)

2. *Gates's* Replacement of the Two-Prong Test

In *Gates*, the Supreme Court abandoned this two-pronged test and replaced it with a totality-of-the-circumstances analysis. (*Gates, supra*, 462 U.S. at p. 238.) In so doing, the Supreme Court clarified both the role of the magistrate issuing the warrant and our role as a reviewing court:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons

8.

supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. [Citation.]" (*Id.* at pp. 238-239. See also *People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041, overruled on other grounds by *People v. Rundle* (2008) 43 Cal.4th 76.)

*Gates* has a number of implications relevant here. First, *Gates* makes clear that the "reliability" prong is no longer a strict, unyielding prerequisite to a finding of probable cause. Thus, the supporting affidavit's lack of information regarding the informant's reliability is not necessarily fatal to the warrant here. Rather, it is one important factor to have been considered by the magistrate.

Second, *Gates* makes equally clear that the "reliability" issue remains important to the probable cause analysis. That is, the reliability issue remains relevant whether it is viewed as an *Aguilar* "prong" or a *Gates* "circumstance." What defendant fails to appreciate is that reliability concerns can be satisfied in a variety of ways.

*Aguilar* set forth the original phrasing of the two prong test as follows:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, [citation], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant … was 'credible' ***or his information*** 'reliable.' " (*Aguilar*, *supra*, 378 U.S. at 114 revd. *Gates*, *supra*, 462 U.S. 213, fn. omitted, emphasis added.)

Reliability concerns can be assuaged by facts tending to show the credibility of either the informant *or* the information provided (or both). This explains why, post-*Gates*, an informant's track record is only one of many ways to establish veracity. (*United States v. Angulo-Lopez* (9th Cir. 1986) 791 F.2d 1394, 1397.) Veracity may also be established by admission against penal interest or independent police corroboration. (*Ibid*.) An untested informant's tip can also supply probable cause where firsthand knowledge of a crime is shown. (Cf. *United States v. Tirado* (3d Cir. 2005) 133

9.

Fed.Appx. 13, 17. See also *People v. Dolly* (2007) 40 Cal.4th 458, 468 citing *United States v. Perkins* (2004) 363 F.3d 317, 322 [contemporaneous viewing of suspicious activity enhances tip's reliability].)

Therefore, we hold that the absence of facts in a supporting affidavit directly showing reliability of the informant (e.g., track record of accuracy, etc.) is not fatal to the warrant where, as here, credibility is shown through: (1) the informant's personal, firsthand observation of criminal activity, and (2) corroboration by law enforcement.

### 3. The Informant's Personal Observation of Criminal Activity

The informant cited in Deputy Bravo's affidavit personally observed defendant sell drugs in the apartment. This weighs in favor of the tip's credibility. (*United States v. Tirado*, *supra*, 133 Fed.Appx. at p. 17; *People v. Dolly*, *supra*, 40 Cal.4th at p. 468.) Moreover, it distinguishes the primary case on which defendant relies: *Bailey v. Superior Court* (1992) 11 Cal.App.4th 1107 (*Bailey*).

In *Bailey*, two informers observed heavy foot traffic in and out of an apartment. (*Bailey, supra*, 11 Cal.App.4th at p. 1110.) Based on the heavy foot traffic, the informants concluded that the defendant was dealing drugs and engaging in prostitution. (*Id.* at p. 1112.) This inferential step troubled the *Bailey* court. (*Ibid.* [" 'Heavy foot traffic' does not necessarily engender criminal behavior."].) The Second District held that heavy foot traffic, alone, was insufficient to establish probable cause. (*Id.* at pp. 1111-1113.)[7]

*Bailey* is inapposite to the present case. *Bailey*'s probable cause analysis was not focused on the alleged unreliability of the informants, but rather on the propriety of inferences drawn from their observations. (See *Bailey*, *supra*, 11 Cal.App.4th at pp.1111-1113.)

---

[7] Indeed the superior court impliedly agreed with *Bailey*'s holding, stating that foot traffic alone does not necessarily mean illegal activity is occurring.

There was no indication that the informants in *Bailey* had ever witnessed a crime. (*Bailey, supra,* 11 Cal.App.4th at p. 1113.)  In contrast, the supporting affidavit here sets forth the informant's personal observation of defendant selling drugs in the apartment.[8]

### 4. Law Enforcement Corroboration of the Confidential Informant's Information

The veracity of the informant's information was further bolstered by law enforcement's independent corroboration.

It is important to note at the outset that law enforcement need not corroborate every single tip or piece of information provided by an informant.  (See *United States v. Martinez-Garcia* (9th Cir. 2005) 397 F.3d 1205, 1216; *People v. Medina* (1985) 165 Cal.App.3d 11, 20 fn. 6.)

Here, the superior court was satisfied that law enforcement sufficiently corroborated the informant by surveilling the premises and finding methamphetamine on a female subject who was stopped after exiting the apartment and driving away. Moreover, law enforcement confirmed the identity of defendant and his prior narcotics-related violations.

From these facts, the magistrate and superior court concluded that sufficient probable cause had been established.  Under the *Gates* "totality of the circumstances" test, we see no basis for disturbing those determinations.

---

[8] *Bailey* is distinguishable on other points as well.  Here, the relevant probable cause inferences were drawn from more than mere foot traffic.  (Cf. *Bailey*, *supra*, 11 Cal.App.4th at p. 1112 ["Both informants saw 'heavy foot traffic' and from this concluded that Ms. Bailey was dealing drugs and was engaged in prostitution."].)  In addition to unusual foot traffic, law enforcement observed an individual exit the apartment less than three minutes after arriving.  The individual was stopped and found with bindles of suspected methamphetamine.  Even the fact that law enforcement conducted surveillance at all further distinguishes *Bailey*.  (*Id*. at p. 1114 ["The officers could have conducted surveillance to confirm the suspected activities."].)

*B.*     *"Staleness"*

Defendant next argues that the information set forth in the affidavit was "stale" and therefore incompetent to supply probable cause.

The law on this issue is well-established:

> "No bright-line rule defines the point at which information is considered stale. [Citation.] Rather, 'the question of staleness depends on the facts of each case.' [Citation.] 'If circumstances would justify a person of ordinary prudence to conclude that an activity had continued to the present time, then the passage of time will not render the information stale.' [Citation.] [¶] Courts have upheld warrants despite delays between evidence of criminal activity and the issuance of a warrant, when there is reason to believe that criminal activity is ongoing or that evidence of criminality remains on the premises. [Citations.]" (*People v. Carrington* (2009) 47 Cal.4th 145, 163-164.)

We look at the circumstances without applying bright-line rules or counting days like "a merchant would beads on an abacus." (*United States v. Tiem Trinh* (1st. Cir. 2011) 665 F.3d 1, 13.)

Here, there were a number of facts contained in the affidavit that were undoubtedly "fresh": heavy and unusual foot traffic at the apartment, and a female being stopped with methamphetamine after leaving the apartment. These facts justify a conclusion that the illegal activity witnessed by the informant continued to the time the warrant was sought.[9] Therefore, the passage of time did not render the information stale. (See *People v. Carrington*, *supra*, 47 Cal.4th at pp. 163-164.)

---

[9] See also *People v. Wilson* (1986) 182 Cal.App.3d 742 (*Wilson*). In *Wilson*, a search warrant was issued against two suspected methamphetamine labs. (*Id.* at p. 746.) The warrant was based, in part, on a nearby resident reporting a strong odor of ether, which can accompany the manufacture of methamphetamine. (*Id.* at pp. 746-747.) The last date on which the resident smelled ether was February 1, 1984, but the supporting affidavit was not executed until March 12, 1984. (*Id.* at p. 754.) On appeal, the defendant attacked the warrant's supporting affidavit on "staleness" grounds. The Sixth District rejected the defendant's "staleness" claim. The *Wilson* court concluded that the nature of the crime and the inference that the lab would likely be functioning when the

## II.
## SECTION 654 REQUIRES A STAY OF THE CONCURRENT SENTENCES ON COUNTS III AND IV

Defendant argues that section 654 requires that the sentences on counts III and IV be stayed. In deciding this issue, we must first determine whether defendant's claim is cognizable on appeal. We conclude that it is. Therefore, we subsequently address the merits of defendant's claim and conclude that a stay of the sentences on counts III and IV is required.

A. *Defendant's section 654 claim is not barred on appeal*

Section 654 claims are not waived by failing to object in the lower court. (*People v. Hester* (2000) 22 Cal.4th 290, 295.) " 'Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' [Citation.]" (*Ibid.*, quoting *People v. Perez* (1979) 23 Cal.3d 545, 549-550 fn. 3.)

However, California Rules of Court, rule 4.412(b) sets forth an explicit exception to this general rule of nonwaiver. The rule states:

> "By agreeing to a specified prison term personally and by counsel, a defendant who is sentenced to that term or a shorter one abandons any claim that a component of the sentence violates section 654's prohibition of double punishment, unless that claim is asserted at the time the agreement is recited on the record." (Cal. Rules of Court, rule 4.412(b) ("Rule 4.412(b)").)

The People argue defendant is estopped[10] from raising a section 654 claim, relying on the California Supreme Court case, *People v. Hester*, *supra*, 22 Cal.4th 290 (*Hester*),

_____

warrant was executed defeated the defendant's staleness contentions. (*Id.* at pp. 754-755.)

[10] Various courts have used terms like "waiver"; "estoppel"; and "abandonment" all to reference the exception found in Rule 4.412(b). (See, e.g., *Hester*, *supra*, 22 Cal.4th 290, 295 ["estopped"; "waiver"], 296 ["abandoned"]; *In re Giovani M.* (2000) 81 Cal.App.4th 1061, 1066 ["estopped"; "waived" and "abandoned"].) We use whatever

which in turn relied on California Rules of Court, rule 4.412(b).  We conclude that *Hester* is inapposite and that no abandonment of the section 654 claim occurred.

In *Hester*, the defendant entered no contest pleas to five substantive counts and admitted a deadly weapon allegation in exchange for an agreed term of four years in prison.  (*Hester*, *supra*, 22 Cal.4th at p. 293.)  At the sentencing hearing, no section 654 claim was made by defense counsel.  (*Ibid.*)  The superior court imposed a four-year prison term for the burglary count, concurrent three-year terms for the counts of felony assault and dissuading a witness, and concurrent jail terms for the misdemeanor counts.  (*Ibid.*)  Defendant appealed and petitioned for a writ of habeas corpus.  (*Id.* at p. 294.)  The Court of Appeal modified the judgment to reflect a stay of the concurrent terms imposed for the felony assault and dissuading counts.  The Supreme Court reversed, holding that the conditions for abandonment of section 654 claims set forth in Rule 4.412(b)'s predecessor, rule 412(b), had been met.  (*Hester*, *supra*, at p. 296.)  Specifically, the defendant had agreed to a specified prison term and was sentenced to that same term; and no claim was asserted at the change of plea hearing on section 654 grounds.  (*Hester*, *supra*, at p. 296.)  Therefore, the Court held, rule 412(b)'s abandonment rule applied, and the defendant could not raise a section 654 claim on appeal.  (*Hester, supra*, at pp. 295-296.)

*Hester* is distinguishable.[11]  Rule 4.412(b) requires that a defendant assert his or

---

term is used in the authority we are citing.  If no authority is being cited, we use the term "abandonment" (or its conjugates) in conformity with Rule 4.412(b)'s language.

[11] *Hester* involved a plea bargain while the present case involves a court-indicated sentence. The law is currently unsettled on whether Rule 4.412(b) applies to court-indicated sentences for a specific term (versus plea bargains for a specific term). However, we need not propose an answer to this open question because other facts are dispositive here.  (Cf. *State of California ex rel. Dept. Water Resources v. Texaco, Inc.* (1972) 25 Cal.App.3d 514, 518.)  If Rule 4.412(b) does not apply to court-indicated sentences for a specific term, then *Hester* is instantly distinguishable on that basis.  Even

her section 654 claim when the plea agreement is recited on the record to avoid abandoning the claim. (Cal. Rules of Court, rule 4.412(b).) The *Hester* defendant did not do so. (*Hester*, *supra*, 22 Cal.4th at p. 296.) This failure to assert the section 654 claim was an integral part of *Hester*'s Rule 4.412(b) analysis and holding.

> "He [defendant] did not raise a section 654 objection to any possible
> concurrent terms 'at the time the agreement [was] recited on the record,'
> namely, at the change of plea hearing. Therefore, he abandoned 'any claim
> that a component of the sentence violates section 654's prohibition of
> double punishment.' " (*Hester*, *supra*, at p. 296, first brackets added.)

Conversely, the defendant before us did assert a section 654 claim at the change of plea hearing. At the hearing, defense counsel stated: "… two of those counts will have to be stayed under Section 654, but that can be taken up at the time of sentencing." This assertion of the section 654 claim triggered the exception set forth in Rule 4.412(b). It also distinguishes this case from *Hester* and other abandonment cases. (See *Hester*, *supra*, 22 Cal.4th at pp. 293, 296; *People v. Cole* (2001) 88 Cal.App.4th 850, 873 [defendant raised no section 654 claim with trial court]; *People v. Valenzuela* (1993) 14 Cal.App.4th 837, 841 [defense counsel did not raise double punishment issue when defendant entered plea].)

Concluding that no abandonment of defendant's section 654 claims occurred at the change of plea hearing, we next consider the People's apparent contention that grounds for estoppel arose later, at the sentencing hearing.

Before and during the sentencing hearing, defense counsel asserted a section 654 claim. Nonetheless, the court indicated that there must have been a misunderstanding, because the plea form stated all sentences were to run concurrently. The court then

---

if Rule 4.412(b) does apply, defendant did not abandon his claim under the rule's plain language.

stated: "I'm assuming Mr. Cruz does not wish to withdraw his plea?" Defense counsel responded: "No, your Honor."

First, we note that under Rule 4.412(b)'s exception, a section 654 claim need only be raised *at the time the plea agreement is recited on the record*. (Cal. Rules of Court, rule 4.412(b).) In this case, the agreement was recited on the record at the September 29, 2011, change of plea hearing. Defendant's section 654 claim was raised at that hearing. Rule 4.412(b) contains no requirement that a defendant must subsequently reassert a section 654 claim after the initial assertion. Therefore, we question whether the sentencing hearing is relevant at all, given that Rule 4.412(b)'s exception was triggered at the prior change of plea hearing.

Second, Rule 4.412(b) does more than set forth conditions for finding abandonment in positive terms. The rule also sets forth an exception which, when applicable, *precludes* a finding of abandonment. When a defendant (1) agrees to a specified term; (2) is sentenced to an equal or lesser term, and (3) asserts a section 654 claim when the agreement is recited on the record, no abandonment occurs. (Cal. Rules of Court, rule 4.412(b).) Defense counsel asserted the section 654 claim at the change of plea and sentencing hearings.[12]

B.     *Does section 654 apply?*

Section 654, subdivision (a) states, in part:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.…" (§ 654(a).)

---

[12] Defense counsel's declination of the court's invitation to withdraw the plea does not alter our conclusion. Even if this was an acquiescence to the term indicated by the court, it does not alter the applicability of Rule 4.412(b). Rule 4.412(b) explicitly envisions a scenario in which a defendant both agrees to a specific term and yet still asserts a section 654 claim. (Cal. Rules of Court, rule 4.412(b).)

This provision prohibits multiple punishments for: (1) a single act; (2) a single omission; or (3) an indivisible course of conduct. (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) When a defendant is convicted of two offenses falling within the ambit of section 654, the execution of one of the sentences must be stayed. (*People v. Deloza, supra*, at p. 592.)

The recent California Supreme Court decision in *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*) is instructive in resolving the section 654 issue presented here. In *Jones*, the defendant was driving with a loaded .38-caliber revolver. (*Jones, supra,* at p. 352.) The defendant was convicted of three crimes: (1) possession of a firearm by a felon; (2) carrying a readily accessible concealed and unregistered firearm; and (3) carrying an unregistered loaded firearm in public. (*Ibid.*) He was sentenced to concurrent three-year prison terms on each of the three counts, plus a one-year enhancement. (*Ibid*.)

The defendant appealed, arguing that execution of his sentences on two of the counts had to be stayed under section 654. (*Jones*, *supra*, 54 Cal.4th at p. 352.) The California Supreme Court agreed, holding that a single physical act which violates multiple provisions of law may only be punished once under section 654. (*Jones, supra,* at p. 358.)

The court concluded that the current state of section 654 jurisprudence was untenable. (*Jones*, *supra*, 54 Cal.4th at p. 357.) In that vein, the court reversed *In re Hayes* (1969) 70 Cal.2d 604 (*Hayes*) and disapproved *People v. Harrison* (1969) 1 Cal.App.3d 115 (*Harrison*). These reversals help shape the contours of section 654 law, which in turn guides our analysis.

In *Hayes*, the defendant drove while intoxicated and without a valid license. (*Jones*, *supra*, 54 Cal.4th at p. 355.) He pled guilty to the separate offenses of driving with knowledge of a suspended license and while under the influence of intoxicating liquor. (*Hayes*, *supra*, 70 Cal.2d at p. 605.) He was sentenced for both offenses. (*Ibid*.)

17.

The *Hayes* court held that the sentencing on both violations did not run afoul of section 654. (*Hayes*, *supra*, 70 Cal.2d at p. 605.) *Hayes* recognized that the crucial inquiry in section 654 cases is determining whether there is a "single act" being punished. (*Hayes, supra,* at pp. 605-606.) The *Hayes* court held that the appropriate mode of analysis was to examine only the *criminal* acts at issue (e.g., driving with a suspended license and driving while intoxicated), not the *noncriminal* acts (e.g., driving), to determine if there was a "single act." (*Id*. at pp. 607-608.) *Hayes* rejected the contention that because both violations were predicated on the singular act of driving, they can only be punished once. (*Ibid*.) This contention, rejected by the *Hayes* court, is now an accurate statement of California law under *Jones*. As the Supreme Court succinctly held: "Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*Jones*, *supra*, 54 Cal.4th at p. 358.)

Similarly, in *Harrison*, the defendant was convicted of possession of a revolver by a felon and carrying a loaded firearm in a vehicle on a public street. (*Harrison*, *supra*, 1 Cal.App.3d at p. 118.) Relying on *Hayes*, the *Harrison* court held that the defendant's sentence did not violate section 654.

The *Harrison* decision added an additional component to its reasoning. The *Harrison* decision describes the distinct goals of the two violated statutes: eliminating the potential hazard posed by an ex-felon's possession of firearms (whether loaded or not); and eliminating the potential hazard posed by any person carrying a loaded firearm in public (whether a felon or not). (*Harrison, supra*, 1 Cal.App.3d at p. 122.) Citing *Neal v. State of California* (1960) 55 Cal.2d 11, 19-20, disapproved on other grounds by *People v. Correa* (2012) 54 Cal.4th 331, the *Harrison* court concluded that the "intent or objective" underlying the criminal conduct was therefore not singular, but several. (*Harrison, supra*, at p. 122.) In *Jones*, the Supreme Court rejected this analysis as well, noting that the legal rules it logically engenders are inconsistent with section 654's actual language. (See *Jones*, *supra*, 54 Cal.4th at p. 355.)

We glean two points of law from *Jones's* negative treatment of *Hayes* and *Harrison* that are particularly relevant here. First, we are to look at whether a single *physical* act is being punished (not whether distinct *criminal* acts are being punished). (*Jones*, *supra*, 54 Cal.4th at pp. 355-357.) Second, we do not look to whether the statutes that defendant violated have distinct purposes. (*Id.* at 355.)

It is against this backdrop that we evaluate the facts of the present case. In count I, it was alleged that defendant willfully and unlawfully possessed methamphetamine for purpose of sale. Count III alleged that defendant willfully and unlawfully possessed methamphetamine. As explained *ante*, the relevant inquiry is whether there is a single physical act at issue with respect to both counts.

Only a single *physical* act occurs by virtue of possessing an object, regardless of how many intentions the possessor may have for the object. The same principle applies to possession of *volumes* of a particular substance. (Cf. *In re Johnson* (1966) 65 Cal.2d 393; *People v. Schroeder* (1968) 264 Cal.App.2d 217, 227-228 [possession of volumes of the same type of substance is a single criminal offense].) Here, there is only one physical act underlying counts I and III: possession of methamphetamine; and one physical act underlying counts II and IV: possession of hydrocodone.[13] Neither the information nor Deputy Bravo's testimony regarding intent to sell distinguish between the

---

[13] Our analysis on this issue is consistent with the Second District's analysis in *People v. Branch* (1953) 119 Cal.App.2d 490 (*Branch*). In *Branch*, the defendant was convicted of two counts: possession of marijuana and offering to sell marijuana. He was sentenced on both counts, with the sentences to run concurrently. (*Id*. at p. 491.) The *Branch* court held that the violations were "but one offense," as the possession was incidental to the sale. (*Id*. at p. 496.)

Here, the facts are even more indicative of a single act. While *Branch* involved two ostensibly separate physical acts (i.e., the physical act of possessing of marijuana and the physical act of offering to sell marijuana), the present case involves double punishment of the singular physical act of possessing methamphetamine with multiple intents, and the singular physical act of possessing hydrocodone with multiple intents.

methamphetamine found in the bathroom with the methamphetamine found in the bedroom.[14]   Thus, the record indicates that there was a singular act of possession underlying both counts.

Our analysis is unaffected by the very real possibility that defendant harbored multiple criminal objectives in possessing the methamphetamine.  The number of criminal objectives a defendant entertains is only relevant in cases involving multiple physical acts.  (*People v. Mesa* (2012) 54 Cal.4th 191, 198-199.  See also *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1345-1346, superseded by statute or other grounds as recognized in *People v. Franz* (2001) 88 Cal.App.4th 1426.)  As explained above, this is not such a case.  So, rather than attempting to divine what objective or objectives defendant might have had in possessing the methamphetamine, "we find it better to rely on section 654's actual language in resolving this single-act case."  (See *Jones*, *supra*, 54 Cal.4th at p. 360.)  In so doing, our analysis becomes simple:  the superior court imposed multiple concurrent[15] jail sentences on a single physical act.  Under *Jones*, this was impermissible.

---

**14** Even if this were not the case, the simultaneous possession of two or more "batches" of a single type of controlled substance would still only be one physical act. (See *People v. Schroeder*, *supra*, 264 Cal.App.2d at pp. 227-228.)

**15** The fact that the sentences were concurrent rather than consecutive does not bring them into compliance with section 654.  (See *People v. Deloza*, *supra*, 18 Cal.4th at pp. 591-592 ["If, for example, a defendant suffers two convictions, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed.  [Citation.]  Section 654 does not allow any multiple punishments, including either concurrent or consecutive sentences. [Citation.]".  See also *Branch*, *supra*, 119 Cal.App.2d at p. 496.)

## III.
## SECTION 4019 DOES NOT VIOLATE DEFENDANT'S EQUAL PROTECTION RIGHTS

Defendant argues that equal protection considerations require that section 4019 be applied retroactively. We reject this contention briefly, having recently rejected it at greater length in *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*). (See also *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*); *People v. Kennedy* (2012) 209 Cal.App.4th 385.)

The first prerequisite to an equal protection claim is a showing that a legal classification treats similarly situated groups unequally. (*Ellis*, *supra*, 207 Cal.App.4th at p. 1551 quoting *Brown*, *supra*, 54 Cal.4th at pp. 328-329.) Reviewing courts determine whether groups are "similarly situated" in the specific context of the law being challenged; not whether the groups are "similarly situated" in all respects. (*Ellis, supra,* at p. 1551.)

In *Brown*, the California Supreme Court noted that the purpose of section 4019 is incentivizing good behavior.[16] This goal is not served " 'by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response….' " (*Ellis*, *supra*, 207 Cal.App.4th at p. 1551, quoting *Brown*, *supra*, 54 Cal.4th at pp. 328-329.) Therefore, prisoners who served time before and after amendments to section 4019 are not "similarly situated" for equal protection purposes. (*Ellis*, *supra*, at p. 1551.) Because defendant fails to show that section 4019 treats "similarly situated" groups unequally, he asserts no cognizable equal protection claim.

## DISPOSITION

The judgment is modified to reflect a stay of the execution of the two concurrent three-year jail sentences on counts III and IV, pursuant to section 654. The imposition of

---

[16] Though *Brown* dealt with a different amendment to section 4019, we have applied its reasoning to the October 1, 2011, amendments to section 4019 which are at issue here. (See *Ellis*, *supra*, 207 Cal.App.4th at pp. 1551-1552.)

the $50 drug laboratory fees and $100 drug program fees on counts III and IV, are stayed pursuant to section 654. (*People v. Sharret* (2011) 191 Cal.App.4th 859 [drug laboratory fee is a penalty]; *People v. Sierra* (1995) 37 Cal.App.4th 1690 [drug program fee is a penalty].) As modified, the judgment is affirmed. The matter is remanded to the trial court to amend the abstract of judgment accordingly, and to transmit certified copies of the amended abstract to all appropriate parties and entities.

_____
Poochigian, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Kane, J.